1  MARK C. ZEBROWSKI (CA SBN 110175)
   MZebrowski@mofo.com
2  MORRISON & FOERSTER LLP
   12531 High Bluff Drive, Suite 100
3  San Diego, California  92130-2040
   Telephone: 858.720.5100
4  Facsimile: 858.720.5125

5  Attorneys for Plaintiffs
   ESI GROUP, ESI NORTH AMERICA, INC.,
6  AND ESI US R&D, INC.

7

8              **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  ESI GROUP, a foreign corporation,        Case No. **'17 CV 2293 AJB NLS**
    ESI NORTH AMERICA, INC., a
12  Michigan corporation, and                **VERIFIED COMPLAINT**
    ESI US R&D, INC., a Michigan
13  corporation,                             **JURY TRIAL DEMANDED**

14                    Plaintiffs,

15          v.

16  WAVE SIX, LLC, a California limited
    liability company, PHILIP SHORTER,
17  an individual, VINCENT COTONI, an
    individual, SASCHA MERZ, an
18  individual, and TERENCE
    CONNELLY, an individual,
19
                      Defendants.
20

21          Plaintiffs ESI Group, ESI North America, Inc., and ESI US R&D, Inc., by

22  and through undersigned counsel, state the following for Plaintiffs' Complaint:

23                          **INTRODUCTION**

24          This action arises out of Defendants' blatant theft, copying and use of not

25  only Plaintiffs' copyright protected writings and property, but also its irrefutable

26  trade secret file and model format used for Plaintiffs' highly technical proprietary

27  vibro-acoustic modeling methodologies and protocols in software developed for

28  critical component design in spacecraft, launch vehicles and other applications.

                                    1

The individual Defendants learned of and used the trade secret file and model format while they were employed by Plaintiffs.

Despite contractual and statutory obligations of confidentiality and other legal obligations, Plaintiffs have recently learned that Defendants have, along with their new employer, used and continue to use Plaintiffs' trade secret file format on a continuing and repeated basis.  Defendants have done so by developing software that interacts with the Plaintiffs' software in a way that is proprietary to the Plaintiffs. This scheme provides a way by which the Defendants can transfer and have transferred the Plaintiffs' customers' software usage from the Plaintiffs' software to the Defendants' software capability.

The vibro-acoustic software industry is comprised of a limited number of credible and capable companies like Plaintiff.  Plaintiff and those other companies have toiled for decades and have spent massive amounts of time and research dollars to achieve and maintain their capabilities and competencies.  On the other hand, Defendants' misappropriation and use of Plaintiffs' undeniably protectable information has allowed them to leap into that group of companies while at the same time obviating the years of toil, time, research and development and significant cost involved.  Quite frankly, there is no way possible for Defendants to possess or have independently developed the ability to interact with Plaintiffs' vibro-acoustic analysis software ("VA One") without knowing, using, misappropriating and continuing to misappropriate Plaintiffs' trade secret file and model format.  This conclusion, in addition to the above statements, is blatantly true because the validation and development of the techniques and proprietary nature of Plaintiffs' trade secret information simply cannot be developed overnight nor exclusively with in-house resources.  Indeed, for this type of analytical product, while understanding the theory and coding the formulas is somewhat straightforward, the elimination of all potential and actual errors in a complex industrial software such as VA One is very difficult and extremely time consuming.

VERIFIED COMPLAINT

That process cannot be accomplished without extensive real world testing performed with actual customers or partners on real equipment (space launchers, aircrafts, automobiles, machinery, etc.) in numerous complex operating environments and circumstances. This process and lengthy development necessarily requires many years of effort and competitive engineering study contracts negotiated and executed worldwide, which Plaintiff indeed did go through to create and validate VA One over ten years, while combining its proprietary knowhow and modules from several industrial software codes acquired and integrated over the years.  This effort proceeded along with the leadership and consulting services of world class expert scientists and university professors from the North America and Europe.  For Defendants to have supposedly developed and validated their competitive product in a couple of years, as a "start-up" is totally impossible.  That is, unless they had the benefit of Plaintiffs' proprietary and trade secret information. Defendants have actively conspired and worked together over several years in furtherance of their illicit scheme to steal Plaintiffs' proprietary and trade secret information and to engage in unfair competition with Plaintiffs and have done exactly that.

## **PARTIES, VENUE, AND JURISDICTION**

1.      Plaintiff ESI Group is a French corporation with its principal place of business in Paris, France.

2.      ESI US R&D, Inc. is a Michigan corporation with its principal place of business in Farmington Hills, MI.

3.      ESI North America, Inc. is a Michigan corporation with its principal place of in Farmington Hills, MI.

4.      ESI Group is the French parent corporation of the other ESI entity plaintiffs.  All ESI-related entities have participated in the creation, development and proprietary protection and use of the trade secrets that form a part of the basis

of the claims made here.  Unless noted otherwise, ESI Group, ESI US R&D, Inc. and ESI North America, Inc. may be referred to herein collectively as "ESI."

5.    Defendant Wave Six, LLC is, upon information and belief, a California limited liability company with its principal place of business at 11975 El Camino Real, San Diego, California.

6.    Defendant Philip Shorter is, upon information and belief, a Michigan citizen.

7.    Defendant Vincent Cotoni is, upon information and belief, a California citizen.

8.    Defendant Sascha Merz is, upon information and belief, a California citizen.

9.    Defendant Terence Connelly is, upon information and belief, a Michigan citizen.

10.    This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1338 (copyright matter); 18 U.S. Code § 1836 (Defend Trade Secrets Act of 2016); and 28 U.S.C. § 1367 (supplemental jurisdiction).

11.    Personal jurisdiction over Defendant Wave Six is proper in this Court because it resides in the Southern District of California and has its principal place of business there; has caused an act to be done, or consequences to occur, in this state resulting in an action for tort; and has committed unlawful acts directed toward, and having an impact upon, the State of California.

12.    Personal jurisdiction over Defendants Shorter, Cotoni, Merz, and Connelly is proper in this Court because they either reside in the State of California and in this district or have contractually agreed to the exclusive jurisdiction in this Court or both; have caused acts to be done, or consequences to occur, in this state resulting in an action for tort; and have committed unlawful acts directed toward, and having an impact upon, the State of California.

4

VERIFIED COMPLAINT

13.     Venue is proper in this District under 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

**History of ESI and Defendants**

14.     ESI is a leading innovator in Virtual Prototyping software and services for, among other things, vibro-acoustic modeling and analysis.

15.     Virtual prototyping is a method in the process of product development that involves using computer-aided design (CAD), computer-automated design (CAutoD), and Computer-aided engineering (CAE) software to validate a design before committing to making a physical prototype.

16.     In simpler terms, it permits a manufacturer to analyze a prototype of its product without having to actually manufacture the product and subjecting it to physical testing.

17.     This is done, in the case of vibro-acoustic analysis, by creating computer generative geometrical shapes (parts, usually 3-Dimensional), building the shapes into a computer model of a product, and analyzing this computer model to predict the vibration and noise that would be observed if an actual test were to be performed.

18.     Each of the four named individual Defendants at one time worked for ESI and was provided access to ESI's work and products in the highly technical area that involves development of vibro-acoustic modeling and analysis software.

19.     Defendant Philip Shorter began working for ESI R&D, Inc. in March 1, 1999 and worked for ESI until November 16, 2012.

20.     Shorter signed an employment agreement, attached here as Exhibit A.

21.     Defendant Vincent Cotoni began working for ESI R&D, Inc. on July 22, 2002 and worked for ESI until March 15, 2013.

22.     Cotoni signed an employment agreement, attached here as Exhibit B.

23.     Defendant Merz began working for ESI R&D, Inc. on January 10, 2010 and worked for ESI until March 15, 2013.

VERIFIED COMPLAINT

24.     Merz signed an employment agreement, attached here as Exhibit C.

25.     Defendant Connelly began working for ESI North America, Inc. on December 4, 2006 and worked for ESI until July 5, 2013.

26.     Connelly signed an employment agreement, attached here as Exhibit D.  He also signed an amendment to that agreement, but that amendment did not alter his obligations of confidentiality, nor did it alter his obligations with respect to applicable trade secret acts or copyright law.  This amendment is also in Exhibit D.

27.     Each of their employment agreements obligated each individual Defendant to acknowledge that "as a result of his/her employment with Employer [ESI], he/she will necessarily become informed of, and have access to, confidential information of the Employer [ESI] including, without limitation, the following categories of information (collectively, the 'trade secrets')," including "Product information, including software, use manuals, and technical information concerning Employer [ESI] digital simulation technologies."

28.     Each individual Defendant further acknowledged that its relationship with ESI was "one of confidence with respect to the trade secret and such information, even though it may be developed or otherwise acquired by Employee, is to the fullest extent allowed by law the exclusive property of the Employer [ESI] to be held by Employee in trust and solely for the Employer's [ESI's] benefit."

29.     Therefore, each individual Defendant, "during and after employment by Employer [ESI], regardless of the reason for the termination of Employee's employment," agreed to:

    a.  "Hold all such information in confidence and not to discuss, communicate, or transmit it to others, or make any unauthorized copy or use of such information in any capacity, position or business unrelated to that of Employer [ESI];

    b.  Use the trade secrets only in furtherance of proper Employer-related reasons for which such information is disclosed or discovered;

6

c. Take all reasonable action, that Employer [ESI] deems necessary or appropriate, to prevent the unauthorized use or disclose of or to protect Employer's [ESI's] interest in the trade secret . . . ."

30.    Moreover, each individual Defendant agreed that during the course of his employment, "any new intellectual property developed, created, or learned by the Employee, within the scope of employment, shall be fully disclosed to the Employer and shall immediately become and at all times remain the exclusive intellectual property of the Employer to the fullest extent allowed by law," and that "[s]uch new intellectual property shall be kept secret under the requirements of . . . this agreement, and shall not be published except under instructions of the Chief Executive Officer or his appointed officer."

31.    Each individual employee further agreed that any violation of his agreement "will cause Employer immediate and irreparable harm and that the damages which Employer [ESI] will suffer may be difficult or impossible to measure.  Therefore, upon any actual or impending violation of this agreement, Employer shall be entitled to the issuance of a restraining order, preliminary and permanent injunction, without bond, restraining or enjoining such violation by Employee or any other entity or person acting in concert with Employee.  Such remedy shall be additional to and not in limitation of any other remedy, which may otherwise be available to Employer."

32.    The restricted covenant pertaining to confidentiality was expressly deemed to "survive termination of this agreement."

33.    The individual Defendants expressly agreed in their respective agreements that "[n]o waiver, modification or amendment of any of the terms of this agreement shall be effective unless made in writing and signed by the party to be charged."

34.    Eventually, the four individual Defendants all left ESI (some on the same day) and began operating Wave Six, LLC, a direct competitor to ESI that bills

7

itself as the "Next generation CAE software for vibro-acoustics and aero-vibro-acoustics." See, https://wavesix.com

35.     Wave Six is a direct competitor to ESI, offers many similar products and services, and competes for many of the same clients, including, but not limited to The National Aeronautics and Space Administration ("NASA"), Lockheed Martin, SpaceX, ATA Engineering, Quartus Engineering, Blue Origin, Virgin Galactic, Honda, Ford Motor Company and General Dynamics.

36.     Defendants had full knowledge of their obligations and restrictions under their Confidentiality agreements.

**ESI's Trade Secrets**

37.     One of the highly technical proprietary products developed and commercialized by ESI is its VA One Vibro-Acoustic Simulation Software.

38.     The VA One simulation software accounts for noise and vibration at the design stage of a prospective product and allows users to diagnose potential noise and vibration problems up front in their development process and as they make advancements and improvements.

39.     This type of simulation software is used in the auto industry, marine industry, and in the aerospace and defense industry, among others.

40.     NASA, by way of example, uses the VA One to analyze the vibro-acoustics of its payloads, rockets, and launch vehicles to ensure their safety, proper construction, and the like.

41.     This software predicts vibration levels of launched spacecraft and performs as a virtual vibration calculator that predicts how rockets and their components will shake, vibrate, and hold up under extreme conditions.

42.     ESI has also developed a file and model format for the RAYON Boundary Element Method ("BEM") Solver that is used as part of ESI's VA One vibro-acoustics program.  VA One consists of many subprograms.  This file and

VERIFIED COMPLAINT

model format is necessary to communicate between ESI's RAYON BEM Solver and the VA One sub-programs.

43.     BEM Solver models are used to describe the acoustic wave propagation in bounded and unbounded acoustic spaces.  They contain proprietary ESI formulations in addition to formulations from scientific literature.  The RAYON BEM solver has been under continuous development since 1983.  See, *Banerjee, Prasanta Kumar (1994), The Boundary Element Methods in Engineering (2nd ed.), London.*  ESI's  RAYON-BEM solver was developed over more than twenty years largely through competitive contracts with the European Space Agency  satellite launcher space program and further extended and adapted to the automotive, aeronautical and other industries.  ESI's resulting VA One solution combines and extends these unique and highly technical contributions validated over decades of sophisticated proprietary and costly experimental test programs by the European Space Agency ('ESA"), NASA and their key contractors such as Boeing, Airbus and others.

44.     ESI's BEM Solver contains extensive functionality that a client would need to model the low frequency response of bounded and unbounded fluids within the VA One environment and allows clients to create accurate models of fluid loading, scattering, radiation, and transmission of sound.  In essence, the incorporation of ESI's BEM Solver within VA One software allows a customer to accurately understand, address and resolve potential design problems on the front end of development of those products.

45.     It is ideal for modeling problems that involve acoustic radiation into unbounded spaces or describing excitation of structure due to complex random acoustic environments.

46.     ESI's BEM Solver file and model format is used to communicate with other sub-programs of ESI's VA One product and to input different variables and

produce outputs of different variables.  ESI'S BEM Solver was developed exclusively by ESI and it is entirely proprietary only to ESI.

47.    Both the VA One product and the BEM Solver file format are ESI's proprietary trade secrets.

48.    In particular, ESI's BEM Solver is the only solver that would be able to be used with ESI's VA One product, short of another party misappropriating the underlying file format that comprises ESI's BEM Solver.

49.    This file and model format is not published or made public in any external or customer documentation by ESI.

50.    It is kept confidential and is highly guarded by ESI.

51.    ESI takes many reasonable and extensive steps to maintain the confidentiality of this file and model format, including the use of confidentiality agreements with all customers, clients, and employees; only making the file and model format available or accessible internally within ESI on a need-to-know basis; maintaining security on all of its company locations, offices, and warehouses; demanding password protection on all computers, including multi-level and stepped passwords and security protocols; and many other security services and protocols.

52.    The ESI internal documentation of the file and model format is 24 pages long. The file and model format contains unique and custom format that would not be replicable by anyone without knowledge of the original coding.  Quite simply, it would make absolutely no sense to anyone viewing unless the viewer knew what each symbol and character item meant or represented.

53.    It would, therefore, be impossible to duplicate the software coding and use it for another BEM Solver to communicate with ESI's VA One without intimate familiarity with ESI's file and model format.

54.    This BEM Solver file and model format has been proprietary to ESI for over thirty-five (35) years and is the culmination of 35 years of work by, at any

given time, 6 employees working on the trade secret continuously, resulting in over 200 man-years going into perfecting the trade secret.

55.     ESI has spent millions of dollars over the years and decades in perfecting the BEM solver, improving it, advancing it, and spending time and money on research and development to do the same.

56.     If a competitor were to get their hands on a current iteration of the BEM Solver file and model format, they would be able to bypass decades of research and development burden, expense and experience, in addition to the related many hundreds of thousands of dollars per feature and cumulating to millions of dollars that ESI has spent developing this multi-domain suite of solvers and acquiring and integrating its series of complex sub-modules.

57.     Such a competitor would also be able to immediately begin competing in a space in which ESI is the primary player and in which ESI has a substantial market lead.

58.     It is for these reasons that ESI takes such extensive steps to protect the confidentiality of its trade secrets.

59.     Despite these reasonable and extensive steps to maintain the confidentiality of its trade secrets, it is now believed that all Defendants have misappropriated ESI's trade secret, have used it and continue to this day to use it.

**Defendants' Misappropriation of ESI's Trade Secret**

60.     Several key ESI US R&D employees (i.e., the individual Defendants) departed ESI at or near the same time to begin working for Wave Six.

61.     In fact, the individual Defendants started Wave Six with the purpose of competing against ESI.

62.     The individual Defendants even solicited other ESI employees (and one another) to join them at Wave Six in violation of the non-solicitation covenants contained in each of their employment agreements (attached here as Exhibits A-D).

VERIFIED COMPLAINT

sd-708861

63.     This has enabled Wave Six and the individual Defendants to make illegal use of ESI trade secret file and model format to interfere with existing ESI customer relationships by using ESI's trade secrets for their own use.

64.     This misappropriation has now been established by a simple request for technical support by one of ESI's customers—NASA.

65.     As noted above, NASA is one customer to whom ESI has licensed its vibro-acoustic program VA One.

66.     There is only one BEM Solver (comprised of the file and model format trade secret) that can be used as a pre- and post-processor to work directly with the VA One, and that is ESI's confidential and trade secret BEM Solver.  ESI's BEM Solver is, in essence, the "missing link" that permits the analysis of low frequency vibrational response.

67.     The ESI trade secret BEM Solver communicates with VA One, typically allows NASA, ESA and their contractors to analyze the vibration levels of their spacecrafts, components and payloads and allows NASA and ESA to troubleshoot any possible problems with the vibration levels of and on their spacecrafts, as more fully described below.

68.     In order to more fully understand the uniqueness and proprietary nature of ESI's trade secrets, a short explanation of computer assisted engineering ("CAE") is appropriate.  A general approach of a classic CAE solution is to run a preprocessor to prepare a file (the input file, which is a set of very specific data files and not simply a model) then to run a solver (a BEM algorithmic equation solver for example) and to read the output file within a post processor.  However, VA One is NOT this kind of CAE solution.  It is a solution that directly integrates information between the BEM solver and VA One which is used to generate results unique to this paired combination.  VA One is unique to communicate and interact with a BEM solver to solve a model in this way. This allows VA One to solve significantly more complex physics than a traditional BEM solver with a standard

VERIFIED COMPLAINT

sd-708861

pre- and post-processing Graphic User Interface ("GUI"). That means that the specification of the interaction between VA One, and the BEM solver is NOT an input file in the sense of preprocessor, but is a set of files to secure this interchange between the model and the physics.  The key to that very complex ability is found in the file formats of the Rayon BEM solver, both its input and export file formats.

69.     ESI learned of the Defendants' misappropriation only by chance.  On April 6, 2016, an employee from NASA contacted ESI technical support through email, asking ESI if it could answer some peculiar findings that NASA had found in using a BEM solver to communicate with VA One.  Exhibit E.

70.     When asked what BEM solver NASA was using, NASA responded that it was using "the Wavesix BEM solver," referring to a product that Wave Six is now known to offer called the "Wave6" BEM solver.  *Id.*

71.     This request shows that NASA was using a BEM Solver for VA One, but was not using ESI's BEM Solver (the only BEM Solver in the world that would, short of misappropriation, be able to communicate with the VA One pre and post processor).  NASA was using "Wave Six's" BEM Solver.

72.     ESI received inquiries similar to that of NASA from other customers, including Lockheed Martin.  Wave Six could not have developed on its own nor reverse engineered through trial and error the file and model format that allows "its" BEM Solver to be as tightly integrated with VA One as ESI's own BEM solver.  The BEM Solver Defendants are using also could not have been developed by mere trial and error or independent production or research.  In essence, it cannot be reverse engineered or happened upon by mere chance.  Indeed, the file and model format appears in its physical form as an undocumented sequence of characters with no obvious pattern.  The only way one could decipher what that undocumented sequence of characters means would be to have direct knowledge of the meaning of each figure and letter at the time the file and model format was

VERIFIED COMPLAINT

being used and developed by ESI.  The individual Defendants worked with and did have such knowledge while working at ESI.

73.    The only way that Wave Six could have created a BEM Solver file format to perform such functions with ESI's VA One would have been if Wave Six and the individual Defendants misappropriated and used the ESI BEM file and model format from ESI.  Wave Six's use of the VA One file and model format allowed it to develop its BEM solver before it had a GUI to support it.

74.    By using ESI's file and model format, Wave Six was able to use the VA One GUI.  This allowed Wave Six to use models that ESI customers, like NASA, had built with VA One with no extra effort on the customer's part.

75.    This allowed Wave Six to be able to have ESI customers evaluate their software without much effort (because Defendants' knew ESI's proprietary format). Effectively, Wave Six software integrated into the VA One software seamlessly as would only be possible with such insider knowledge.

76.    In addition, this allowed Wave Six to have a product to sell well before it had a GUI available to support building their own models.  As it developed a GUI, Wave Six apparently went about convincing customers to trust their analysis because they had been able to test the solver without making new models.  Of course, there is less risk (and cost) when one need not invest in the time-consuming process of generating  new models.  This is an effective business model for taking ESI's business that is made possible by having proprietary knowledge of ESI's solution process and file formats (for two-way interaction with VA One, both input and export).

77.    Wave Six continues to provide service to NASA by way of its BEM Solver and is thus using ESI's trade secrets for its own financial gain.

78.    In order to resolve the technical support request regarding the issues NASA was experiencing with its testing, ESI asked NASA to provide it with more information regarding the Wave Six BEM Solver.  NASA revealed that VA One

VERIFIED COMPLAINT

was exercised by NASA in a "batch mode" with a series of commands to run parts of VA one separately.  Normally, NASA would run VA One through its GUI and not separate the BEM solver so completely.  Sometimes this may be done to run a portion of the analysis on a different computer, but in this case the goal was to use a different BEM solver -- the one offered by Wave Six.

79.    It is therefore clear that Wave Six's BEM Solver was created using the misappropriated and stolen ESI trade secret.

80.    As further proof Wave Six intended to sell NASA a Wave Six BEM solver that was compatible with VA One shortly before its inquiry to ESI, NASA issued a pre-solicitation publication related to Wave Six's BEM solver.  The only way for an alternative BEM solver to be compatible with VA One pre and post processors is through the ESI proprietary RAYON BEM file format.

81.    A portion of that NASA pre-solicitation is shown here below, illustrating how Wave Six was able to get NASA to seek a perpetual license for the Wave Six BEM software to continue to work with the VA One Pre- and Post-Process Solver presently and into the future, rather than use the ESI BEM Solver:

VERIFIED COMPLAINT

sd-708861

82.     This pre-solicitation, issued on September 11, 2014 (i.e., hardly one and a half years or less after the next three Defendants left ESI to join Wave Six and the first person to leave and their apparent leader, Defendant Shorter), states that NASA is purchasing the Wave6 BEM License from Wave Six, LLC and that the Wave6 BEM Solver is "compatible with VA One Pre and Post processor Solver" and that Wave Six "hold[s] the source code, and it is proprietary to them." *Id*

83.     Of course, it, in reality, is not proprietary to Wave Six, because the Wave6 BEM Solver was undeniably created by and through the misappropriation and use of what was and remains ESI's proprietary information.

84.     Wave Six's development and creation of this BEM Solver would not have been possible without it—by and through the individual Defendants— misappropriating ESI's trade secret knowledge of its file and model format.

85.     ESI and Wave Six are both competitors in providing the BEM Solver to NASA as well as the wider launch vehicle customer market, as well as the auto, marine, and broader aerospace and defense markets.

86.     Because Wave Six misappropriated ESI's trade secrets and secured contracts for services as a result of its misappropriation and continuing use of ESI's trade secret, ESI has been severely damaged.

87.     Wave Six has been unjustly enriched, not only by way of the contracts and licenses that it has secured, but also by being able to circumvent decades of R&D that cost ESI millions of dollars.

88.     Wave Six, therefore, has inequitably obtained and retained money that, in equity and good conscience, it should not be allowed to retain but for which it should, rather, make restitution.

89.     ESI does not know with certainty what other lost licenses, lost contracts, and lost opportunities it may have suffered or lost out on with other

VERIFIED COMPLAINT

launch vehicle and other customers in the launch vehicle industry and other industries.

90.     It is evident from all of the above that the individual Defendants and Wave Six not only misappropriated ESI's trade secrets, but they knowingly accepted them and disseminated them to others for commercial use.

91.     This use and misappropriation has occurred and continues to occur and is proven in part by the "perpetual license" that NASA has purchased from Wave Six.

92.     The misappropriation of ESI's trade secret file and model format certainly took place at the time the individual Defendants worked at ESI when they learned and used that trade secret.  When they joined Wave Six and began developing the Wave Six BEM Solver that would work with ESI's VA One, they certainly had to disclose that trade secret file and model format to Wave Six in order to develop the Wave Six product that is now known and commercialized as "its" BEM Solver for the VA One testing software.  The misappropriation and use of ESI's trade secret file and model format has continued through today by Wave Six's open sale of "its" BEM Solver that interacts with ESI' VA One.

93.     ESI did not and could not have known about this misappropriation until they were inadvertently contacted by NASA and informed that NASA was using the Wave Six BEM Solver.

94.     Additionally, Wave Six is continuing to use and misappropriate this trade secret as it continues to license it to NASA and other customers, continues to retain it despite the fact that it knows that it has obtained it improperly, and continues to commercialize the Wave6 BEM Solver.

95.     Wave Six's actions constitute actual and threatened misappropriation, as it continues to retain the trade secret for future and continued use and continues to market the Wave6 BEM Solver.

VERIFIED COMPLAINT

96.     In fact, Wave Six still, to the date of filing this Complaint, advertises on its website (http://wavesix.com) its Wave6 BEM Solver, which is described in terms nearly identical to that of ESI's trade secrets.

97.     It is clear that Wave Six has misappropriated ESI's trade secret file and model format, used it, disseminated it, and continues to improperly retain it, use it, and disseminate it, which all constitute a threat of even additional current and future misappropriation.

**Defendants Infringe Upon ESI's Copyright and Unfairly Use ESI's Written Materials**

98.     In addition to the products and services it provides, ESI also provides training materials for various engineering products and methods.

99.     One such training material is titled "Advanced Statistical Energy Analysis (SEA)" and was created by ESI Group.

100.    The Advanced Statistical Energy Analysis (SEA) Course, which covers high frequency vibrational response, was created on or around October 16, 2005.  The file format was generated at ESI on March 3, 2003, but the material was created specifically for the Acoustical Society of America ("ASA") short course.

101.    This material was given as a short course at the ASA meeting in Minneapolis in 2005 and later presented numerous times by ESI personnel.

102.    ESI holds a United States Copyright registration covering an original work of authorship in the Advanced Statistical Energy Analysis (SEA) Course. Copyright Registration No. TX 8-403-795 was issued on September 15, 2017.  A true and correct copy of this registration is attached to this Complaint as Exhibit F[1]. This registration is in full force and effect, and the Work at all times has been owned exclusively by ESI.

---

[1] ESI has also submitted a United States Supplemental Copyright Registration on November 6, 2017, bearing case no. 1-5980849971.  Once issued, ESI will supplement this filing as necessary to reflect that supplemental registration.

VERIFIED COMPLAINT

103.   Another training source was titled "VA One Training – Hybrid FE-SEA Methods," which covers coupling between low frequency and high frequency vibrational response, and was used as a training source by ESI personnel many times.

104.   The VA One Training – Hybrid FE-SEA Methods was created on or around June 2, 2006.

105.   ESI holds a United States Copyright Office registration for an original work of authorship in the VA One Training – Hybrid FE-SEA Methods, Registration No. TX 8-404-259, which was issued on September 15, 2017.  A true and correct copy of this registration is attached to this Complaint as Exhibit G.  The registration is in full force and effect, and the Work at all times has been owned exclusively by ESI.

106.   On or about July 6, 2017, ESI learned and obtained evidence that Wave Six had contributed to a published reference textbook entitled "Engineering Vibroacoustic Analysis, Methods and Applications" edited by Stephen A. Hambric, Shung H. Sung, and Donald J. Nefske and published by John Wiley & Sons, Ltd. in 2016 as ISBN 978-1-119-95344-9.

107.   Specifically, Wave Six, Philip Shorter, and Vincent Cotoni were attributed as contributors and authors of two chapters in that publication: Chapter 11 was titled "Statistical Energy Analysis" and Chapter 12 was titled "Hybrid FE-SEA."

108.   A simple, cursory review of those chapters and comparing them to ESI's proprietary materials makes it immediately clear that Wave Six, Shorter, and Cotoni clearly infringed upon ESI's work and copied and pasted much of it for their own gain.

109.   On behalf of and as part of his employment for ESI, Defendant Shorter created the Advanced Statistical Energy Analysis (SEA) Course and the VA One Training – Hybrid FE-SEA Methods.

sd-708861

110.   Defendant Shorter had access to the Advanced Statistical Energy Analysis (SEA) Course and the VA One Training – Hybrid FE-SEA Methods.

111.   Shortly before his resignation from ESI, Defendant Shorter was observed copying a nearly three foot high stack of documents late on a Saturday night including materials proprietary to ESI which he may not have access to in an electronic format.

112.   There was no logical reason related to his employment at ESI for Defendant Shorter to have printed and copied this volume of materials late at night on a weekend mere weeks before his departure from ESI and in the same week that he announced his resignation.

113.   For ease of reference, attached as Exhibit H is a comparison of several portions of the Defendants' chapters compared to the original ESI material from which it was copied.

114.   It is clear that these materials are not only conspicuously similar, but in most cases the Defendants simply copied and pasted ESI material and passed it off as their own.

115.   Upon review, the Defendants' chapters have the same figures following in the same order as the ESI materials.

116.   Sometimes Defendants would slightly modify the original ESI material, though other times they would not even do that and would instead simply use the original ESI material as it was originally created by ESI.

117.   Below are only a few example of such clear and direct infringement and copying of ESI materials, with many more examples found at Exhibit H:

/ / /

/ / /

/ / /

/ / /

/ / /

20

**Excerpt from Wave Six publication**:

Statistical Energy Analysis                                                                343

**Figure 11.3** Pressure response at driver's ear due to structural excitation applied at a location on the front wheel: (a) measurement repeated 12 times on the same vehicle and (b) measurement repeated on 98 nominally identical vehicles. Reproduced with permission from INCE-USA [1]

**Original ESI publication:**



VERIFIED COMPLAINT

sd-708861

**Excerpt from Wave Six publication**:



**Figure 11.7**   The influence of the cavity on the piston can be represented by a direct field impedance and a reverberant force

**Original ESI Publication:**



sd-708861

**<u>Excerpt from Wave Six Publication:</u>**



358                                                                Engineering Vibroacoustic Analysis

**Figure 11.12**   The principle of phase closure states that on average, a 1D waveguide with random boundary impedance will accumulate a mode every $dk = \pi/L$

**<u>Original ESI Publication:</u>**



/ / /

23                                                              VERIFIED COMPLAINT

sd-708861

**Excerpt from Wave Six Publication**:



Flexure~x'    Evanescent–x'

Flexure–y'    Evanescent–y'

Extension (z')    Torsion (zz')

**Figure 11.13**   The wavetypes of a thin beam

**Original ESI Publication:**

Euler-Bernoulli beam

flexure - x'    evanescent - x'

flexure - y'    evanescent - y'

extension (z')    torsion (zz')

Thin beam has 4 propagating waves, 2 evanescent waves

Figures from T. Burton

www.esi-group.com    © ESI Group – Advanced AutoSEA2 Course    110

VERIFIED COMPLAINT

sd-708861

**Excerpt from Wave Six Publication:**



362                                        Engineering Vibroacoustic Analysis

**Figure 11.16**   Wave propagation in a 2D waveguide

**Original ESI Publication:**

ESI GROUP
THE VIRTUAL TRY-OUT SPACE COMPANY

# 2D wave propagation

Plates/shells support wave propagation in two dimensions

$$u = U(z)\, \exp(i\, k_x\, x)\, \exp(i\, k_y\, y)\, \exp(i\, \omega\, t)$$

Calculation of wavetypes is same as for 1D waveguide but now, U(z) describes displacement field through thickness.
Wavenumber and wave velocities become <u>vector quantities</u>.

• • • www.esi-group.com                © ESI Group – Advanced AutoSEA2 Course          120

VERIFIED COMPLAINT

sd-708861

1

## Excerpt from Wave Six Publication:

2

Statistical Energy Analysis                                                                377



**Figure 11.33**   Radiation efficiency of panel. Solid curves represent measured radiation efficiencies with shaker applied at different drive point locations (intensity scan performed over interior region of rectangular frame when placed in an anechoic chamber; laser vibrometer scan used to determine space average panel vibration). Dashed curve indicates predicted (ensemble average) radiation efficiency using formulation in Ref. [19]. Reproduced with permission from A. Parett and Q. Zhang of General Motors

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

26

**Original ESI Publication:**



VERIFIED COMPLAINT

118.   It is evident from the above that Wave Six, Shorter, and Cotoni merely copied ESI's work and passed it off as their own.

119.   At no point did Wave Six, Shorter, or Cotoni credit or cite ESI as the creator or owner of such material.

120.   By letter dated October 3, 2017, ESI, through its counsel, notified Defendant Wave Six, with copies to Defendants Shorter and Cotoni, that Defendants were in violation of United States copyright law.  The letter also demanded that Defendants cease and desist from further use of ESI's work.  *See* Exhibit I.

121.   ESI also sent letters to the Defendants Shorter and Cotoni, care of their publisher, John Wiley & Sons, informing them that Defendants' work that John Wiley & Sons published infringed on ESI's work and that ESI did not give permission to Defendants to use such work, and asked John Wiley & Sons to cease and desist from further using these materials.  *See*, Exhibit J.

122.   While ESI's counsel has been preliminarily contacted by in-house counsel apparently investigating the infringement, Defendants have not responded to the letters.

123.   Defendants have now incorporated, copied, and used substantial portions of ESI's original work in connection with its business.

124.   Defendants were only privy to ESI's work because it was made available to Shorter and Cotoni as employees of ESI and pursuant to the confidentiality agreements contained in their employment agreements.

125.   Upon information and belief, Defendants' acts were intentional, deliberate, and willful.

126.   Defendants have been unjustly enriched and benefited from their infringement with potential compensation for its contributions to the published book, through customer and industry goodwill, through exposure as an industry

VERIFIED COMPLAINT

thought leader, and in other tangible and intangible, monetary and non-monetary ways.

## CAUSES OF ACTION

## COUNT I

### MISAPPROPRIATION OF ESI'S TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT OF 2016 (All Defendants)

127.   Plaintiffs incorporate the preceding paragraphs by reference as though fully stated herein.

128.   All Defendants have improperly misappropriated ESI's trade secrets in the form of ESI's proprietary, confidential, and secret BEM Solver source file format, knowing or with reason to know that the trade secrets were acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or were derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secret.

129.   Defendants have misappropriated, used, and disclosed ESI's trade secrets without the express or implied consent of ESI, despite the fact that they knew that the trade secrets were derived using improper means and were acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets.

130.   Defendants continue to misappropriate, use, and disclose ESI's trade secrets, including, but not limited to, through its "perpetual license" with NASA and likely others.

131.   Defendants threaten to continue to misappropriate, use, and disclose ESI's trade secrets in the present and in the future.

132.   Defendants do not have consent from ESI to use or disclose ESI's trade secrets, have wrongfully misappropriated, acquired, used, and disclosed ESI's trade secrets, and have used improper means to acquire the trade secrets.

133.   Defendants' wrongful use, disclosure, and withholding of ESI's trade secrets continues and Defendants' actions threaten further and future use, disclosure, and misappropriation.

134.   ESI's trade secrets include, but are not limited to, the technical information, proprietary software coding, design, writing, drafting, and compilation of the underlying file format used for ESI's BEM Solver to be used with ESI's VA One product.

135.   These trade secrets were the result of considerable time, money, effort, research and development, trial and error, and modifications by ESI and ESI employees.

136.   These trade secrets were subject to reasonable and extensive efforts to maintain the confidentiality and secrecy of the underlying file format.

137.   The trade secrets derive independent economic value from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

138.   The trade secret is used in a product and for products and services intended for use in, and that are used in, interstate and foreign commerce.

139.   The individual named Defendants have misappropriated, used, and disclosed the trade secrets in violation of their confidentiality agreements found in their employment agreements.

140.   Defendants' misappropriation and use of ESI's trade secrets is willful and malicious.

141.   As a direct result of Defendants' misappropriation, ESI has suffered and will continue to suffer damages and irreparable harm.

142.   As a direct result of Defendants' misappropriation, Defendants have been unjustly enriched, not only by way of the contracts and licenses that it has secured, but also by being able to circumvent decades of research and development, as well as software and copyrights, that cost ESI millions of dollars.

VERIFIED COMPLAINT

143.   Wave Six and the individual Defendants, therefore, have inequitably obtained and retained money that, in equity and good conscience, they should not be allowed to retain but for which it should, rather, make restitution to ESI.

144.   As a result of Defendants' misappropriation, ESI is entitled to all such relief as is available under the DTSA, including actual damages, restitution of Defendants' unjust enrichment, treble damages, attorneys' fees and costs, and any and all other relief afforded to it under the DTSA or that this Court deems reasonable.

145.   ESI is further entitled to and is seeking a preliminary and a permanent injunction against Defendants, enjoining and restraining them from further using, disclosing, or misappropriating ESI's trade secret and the file format used in the Wave6 product.

## COUNT II

### MISAPPROPRIATION OF ESI'S TRADE SECRETS IN VIOLATION OF THE CALIFORNIA UNIFORM TRADE SECRETS ACT
#### (All Defendants)

146.   Plaintiffs incorporate the preceding paragraphs by reference as though fully stated herein.

147.   ESI's trade secrets are subject to protection under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code § 3426.1, *et seq.*

148.   Considerable time, effort, and money went into the development of the trade secrets, and considerable efforts have been undertaken to ensure that the trade secrets are kept secret and are not generally known to the public.

149.   The trade secrets derive independent economic value from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

150.   Defendants acquired the trade secrets through improper means, including theft and through breach of a duty to maintain their secrecy.

VERIFIED COMPLAINT

sd-708861

151.  Defendants have used and disclosed the trade secrets to others without the express or implied consent of ESI.

152.  Defendants continue to offer to use and disclose, and are using and disclosing, ESI's trade secret, including, but not limited to, through its "perpetual license" with NASA.

153.  Defendants continue to threaten to use the trade secrets and continue to improperly retain the trade secrets.

154.  As a direct result of Defendants' misappropriation, ESI has suffered and will continue to suffer damages and irreparable harm.

155.  As a direct result of Defendants' misappropriation, Defendants have been unjustly enriched, not only by way of the contracts and licenses that it has secured, but also by being able to circumvent decades of research and development, as well as software and copyrights, that cost ESI millions of dollars.

156.  Wave Six and the individual Defendants, therefore, have inequitably obtained and retained money that, in equity and good conscience, they should not be allowed to retain but for which it should, rather, make restitution to ESI.

157.  As a result of Defendants' misappropriation, ESI is entitled to all such relief as is available under the CUTSA, including actual damages, restitution of Defendants' unjust enrichment, exemplary damages in an amount not exceeding twice any award otherwise made to ESI, and any and all other relief afforded to it under the CUTSA or that this Court deems reasonable.

158.  ESI is further entitled to and is seeking a preliminary and a permanent injunction against Defendants, enjoining and restraining them from further using, disclosing, or misappropriating ESI's trade secret and the file format used in the Wave6 product.

/ / /

/ / /

/ / /

VERIFIED COMPLAINT

sd-708861

## COUNT III

### BREACH OF CONFIDENTIALITY AGREEMENT
**(Defendants Philip Shorter, Vincent Cotoni, Sacha Merz, and Terry Connelly)**

159.   Plaintiffs incorporate the preceding paragraphs by reference as though fully stated herein.

160.   Defendants Philip Shorter, Vincent Cotoni, Sacha Merz, and Terry Connelly all signed employment agreements with ESI.

161.   Each of their employment agreements obligated each individual Defendant to acknowledge that "as a result of his/her employment with Employer [ESI], he/she will necessarily become informed of, and have access to, confidential information of the Employer [ESI] including, without limitation, the following categories of information (collectively, the 'trade secrets')," including "Product information, including software, use manuals, and technical information concerning Employer [ESI] digital simulation technologies."

162.   Each individual employee further acknowledged that its relationship with ESI was "one of confidence with respect to the trade secret and such information, even though it may be developed or otherwise acquired by Employee, is to the fullest extent allowed by law the exclusive property of the Employer [ESI] to be held by Employee in trust and solely for the Employer's [ESI's] benefit."

163.   Therefore, each individual Defendant, "during and after employment by Employer [ESI], regardless of the reason for the termination of Employee's employment," agreed to:

    a.   "Hold all such information in confidence and not to discuss, communicate, or transmit it to others, or make any unauthorized copy or use of such information in any capacity, position or business unrelated to that of Employer [ESI];

    b.   Use the trade secrets only in furtherance of proper Employer-related reasons for which such information is disclosed or discovered;

33

c. Take all reasonable action, that Employer [ESI] deems necessary or appropriate, to prevent the unauthorized use or disclose of or to protect Employer's [ESI's] interest in the trade secret . . . ."

164. Moreover, each individual Defendant agreed that during the course of his employment, "any new intellectual property developed, created, or learned by the Employee, within the scope of employment, shall be fully disclosed to the Employer and shall immediately become and at all times remain the exclusive intellectual property of the Employer to the fullest extent allowed by law," and that "[s]uch new intellectual property shall be kept secret under the requirements of . . . this agreement, and shall not be published except under instructions of the Chief Executive Officer or his appointed officer."

165. Each individual employee further agreed that any violation of his agreement "will cause Employer immediate and irreparable harm and that the damages which Employer [ESI] will suffer may be difficult or impossible to measure. Therefore, upon any actual or impending violation of this agreement, Employer shall be entitled to the issuance of a restraining order, preliminary and permanent injunction, without bond, restraining or enjoining such violation by Employee or any other entity or person acting in concert with Employee. Such remedy shall be additional to and not in limitation of any other remedy, which may otherwise be available to Employer."

166. The restricted covenant pertaining to confidentiality was expressly deemed to "survive termination of this agreement."

167. Moreover, individual Defendants expressly agreed in their respective agreements that "[n]o waiver, modification or amendment of any of the terms of this agreement shall be effective unless made in writing and signed by the party to be charged."

168. The individual named Defendants have each breached their employment agreement and confidentiality agreements by:

34

sd-708861

      a.  Discussing, communicating, or transmitting to others ESI's confidential information and trade secrets;

      b.  Using ESI's trade secrets in furtherance of reasons other than for ESI's benefit or use or for which such information was disclosed to the defendants or discovered by them;

      c.  Not taking all reasonable actions to prevent the unauthorized use or disclosure of ESI's interest in its trade secrets or confidential information.

169.  Each individual named Defendant has otherwise disclosed confidential information or trade secrets belonging to ESI or otherwise breached its confidentiality restriction.

170.  As a direct result of the individual named Defendants' breach of their confidentiality agreements, ESI has suffered and will continue to suffer damages and irreparable harm.

171.  As a direct result of the individual named Defendants' breach of their confidentiality agreements, Defendants have been unjustly enriched by being able to circumvent decades of research and development, as well as software and copyrights, that cost ESI millions of dollars.

172.  The individual named Defendants, therefore, have inequitably obtained and retained money that, in equity and good conscience, they should not be allowed to retain but for which it should, rather, make restitution to ESI.

173.  As a result of the individual named Defendants' breach of their confidentiality agreement, ESI is entitled to its actual damages, restitution of Defendants' unjust enrichment, and any and all other relief that this Court deems reasonable.

174.  ESI is further entitled to and is seeking a preliminary and a permanent injunction against the individual named Defendants, enjoining and restraining them from further using, disclosing, or misappropriating ESI's confidential information,

VERIFIED COMPLAINT

sd-708861

trade secrets, the file format used in the Wave6 product, and any other ESI confidential information.

## COUNT IV

**PRELIMINARY INJUNCTIVE AND PERMANENT INJUNCTIVE RELIEF**
**(All Defendants)**

175.   Plaintiffs incorporate the preceding paragraphs by reference as though fully stated herein.

176.   Defendants have committed trade secret misappropriation, in violation of the DTSA and the CUTSA.

177.   Defendants have violated and breached their confidentiality agreements.

178.   Plaintiff has suffered irreparable harm that cannot be remedied by money damages as a result of Defendants' wrongful conduct, and will continue to suffer such harm as long as Defendants are in possession and control of the aforementioned trade secrets and confidential information.

179.   Defendants, in their agreements with ESI, acknowledged and conceded that ESI would be irreparably harmed by such misappropriation or disclosure of its confidential information.

180.   This misappropriation has already caused ESI to suffer loss of customer goodwill and loss of market leading recognition.

181.   ESI cannot be made whole through monetary damages alone and its damages are not easily calculable, leaving ESI without an adequate remedy at law.

182.   The balance of the interests of the parties militates in favor of an injunction in ESI's behalf.

183.   The public has an interest in upholding the DTSA, CUTSA, and other statutes; in protecting company's trade secrets; and in protecting confidential information.

VERIFIED COMPLAINT

sd-708861

184.   Based on the foregoing, ESI is entitled to preliminary injunctive relief and permanent injunctive relief, and is entitled to an Order that, among other things, orders that:

    a.   Defendants are enjoined from, directly or indirectly, selling, transferring, using, disclosing, disseminating, or otherwise misappropriating ESI's trade secrets to any party or person whatsoever, including, but not limited to, use of ESI's file and model format for its BEM Solver and through sale or licensing of Wave Six's Wave6 BEM Solver.

    b.   Defendants are ordered to immediately return to ESI all of its trade secrets, including but not limited to its underlying file and model format of the ESI BEM Solver, in any format (electronic, hard copy, or otherwise), as well as the file and model format that Defendants have "created" and used.

    c.   Any and all other relief, equitable or legal in nature, including any other injunctive relief, that this Court deems appropriate, in addition to any and all monetary damages that ESI may further be entitled to.

## COUNT V

### COPYRIGHT INFRINGEMENT
**(Wave Six, Philip Shorter, and Vincent Cotoni)**

185.   Plaintiffs incorporate the preceding paragraphs by reference as though fully stated herein.

186.   ESI owns the copyrights in its published work described in Paragraphs 97-116 above and has registered its copyrights in said works with the U.S. Copyright Office.

187.   Defendants Wave Six, Philip Shorter, and Vincent Cotoni's actions described above violate the exclusive rights protected by 17 U.S.C. § 106, and so violate 17 U.S.C. § 501(a), because such conduct constitutes willful and

VERIFIED COMPLAINT

unauthorized reproduction, distribution, selling, and public display of Plaintiff's copyrighted materials.

188.   By using and incorporating substantial portions of ESI's work in its business, Wave Six, Philip Shorter, and Vincent Cotoni are attempting to and have unfairly profited from the work created and published by ESI and the inherent expertise and knowledge contained therein.

189.   Defendants' infringement has been deliberate, willful, intentional, malicious and oppressive, without regard for Plaintiffs' rights and was done for the purpose of making commercial use and profit on the Plaintiffs' materials, entitling Plaintiffs to recover increased damages as a result.

190.   By reason of the Defendants' infringement and threatened infringement, ESI has sustained and will continue to sustain substantial injury, loss, and damage to its ownership rights in the work.

191.   Further irreparable harm to ESI is imminent as a result of the Defendants' conduct, and ESI is without an adequate remedy at law.  Plaintiff is entitled to an injunction restraining Defendant Wave Six, its officers, directors, agents, employees, representatives, and all persons acting on its behalf or in concert with it, including but not limited to Philip Shorter and Vincent Cotoni, from engaging in further such acts of copyright infringement pursuant to 17 U.S.C. § 502.

192.   ESI is further entitled to recover from Defendants the damages sustained by ESI as a result of Defendants' acts of copyright infringement, including statutory damages in the amount of $150,000 for each work item infringed or such sum as the Court, in its discretion, may consider just under 17 U.S.C. § 504(c)(2).

193.   ESI is further entitled to recover from Defendants all costs, including its reasonable attorney fees, pursuant to 17 U.S.C. § 505.

VERIFIED COMPLAINT

## COUNT VI

### CIVIL CONSPIRACY
#### (All Defendants)

194.   Plaintiffs incorporate the preceding paragraphs by reference as though fully stated herein.

195.   The individual Defendants, in creating and forming Wave Six to carry out all of the above alleged acts and in working together to carry them out, acted together in the formation and operation of a conspiracy.

196.   All Defendants conspired to and carried out the wrongful acts alleged herein in conjunction with one another.

197.   As a result of all of the acts alleged herein as carried out through the conspiracy of all Defendants, ESI has been damaged through its lost profits, lost opportunities, misappropriation of its trade secrets, disclosure of its confidential information, loss of goodwill, and more.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant it all of the actual damages Plaintiffs have incurred as follows:

1.     For restitution to the extent that the Defendants have been unjustly enriched;

2.     For appropriate treble damages;

3.     For appropriate exemplary damages;

4.     For appropriate statutory damages;

5.     For preliminary and permanent injunctive relief;

6.     For an award of reasonable attorneys' fees, costs, and other expenses as permitted by 42 U.S.C. §1988, the Federal Rules of Civil Procedure, and other applicable law; and

7.     For any and all other equitable or legal relief that this Court deems appropriate.

39

1

## **DEMAND FOR JURY TRIAL**

2   Plaintiffs hereby request a trial by jury on all claims so triable.

3

4   Dated:  November 10, 2017          MORRISON & FOERSTER LLP

5

6                                            By:  _____/s/ Mark C. Zebrowski_____
                                                      Mark C. Zebrowski
7
                                             Attorneys for Plaintiffs
8                                            ESI GROUP, ESI NORTH AMERICA,
                                             INC., and ESI US R&D, INC.
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

40                                    Verified Complaint

# **VERIFICATION**

Bryce Gardner, first being duly sworn, deposes and states that he is the Technical Manager, Vibro-Acoustics, of **ESI Group and ESI US R&D, Inc.** ("Plaintiffs"), in the above-entitled action; that he has read the foregoing Verified Complaint and Demand for Jury and knows its content; and that the statements of fact set forth in the above Verified Complaint and Demand for Jury are true and correct, except as to matters therein stated to be on information and belief; and as to those matters, he believes the same to be true to the best of his knowledge and belief.

_____
BRYCE GARDNER

Sworn to and subscribed before me
this ____ day of _____, 2017

SEE ATTACHMENT FOR
OFFICIAL NOTARIZATION
_____
Notary Public

41                          VERIFIED COMPLAINT

1827160

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**          GOVERNMENT CODE § 8202

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], *not* Notary)

1
2
3
4
5
6
_____          _____
*Signature of Document Signer No. 1*        *Signature of Document Signer No. 2 (if any)*

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of  San Diego

Subscribed and sworn to (or affirmed) before me

on this  7  day of  November , 20 17 ,
            *Date*              *Month*            *Year*
by
(1)  Bryce Gardner

(and  (2)_____ ),
               *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

MARITZA Q. PALAFOX
COMM. #2169537
Notary Public - California
San Diego County
My Comm. Expires Oct. 25, 2020

Signature  Maritza Q Palafox
               *Signature of Notary Public*

*Seal*
*Place Notary Seal Above*

────────────── *OPTIONAL* ──────────────
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document:  Verification          Document Date:  11/7/2017
Number of Pages:  41  Signer(s) Other Than Named Above: _____

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5910