1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

18

19

20

21

22

ESI GROUP, a foreign corporation; ESI
NORTH AMERICA, INC., a Michigan
corporation; and ESI US R&D, INC., a
Michigan corporation,

                                    Plaintiffs,

v.

WAVE SIX, LLC, a California limited
liability company; DASSAULT
SYSTEMES SIMULIA CORP., a foreign
corporation; PHILIP SHORTER, an
individual; VINCENT COTONI; an
individual; SASCHA MERZ, an
individual; and TERENCE CONNELLY,
an individual,

                                    Defendants.

Case No.: 17-CV-2293 TWR (MSB)

**ORDER (1) GRANTING IN PART
AND DENYING IN PART
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT, (2)
DENYING WITHOUT PREJUDICE
DEFENDANTS' MOTION TO
EXCLUDE PLAINTIFFS' EXPERTS,
AND (3) DENYING WITHOUT
PREJUDICE PLAINTIFFS' MOTION
TO EXCLUDE OPINIONS AND
TESTIMONY OF DEFENDANTS'
PROPOSED EXPERTS DR.
HAMBRIC AND MR. BRITVEN**

(ECF Nos. 119, 121, 124)

23

24

25

26

27

28

        Presently before the Court are Defendants' Motion for Summary Judgment ("MSJ,"
ECF No. 119) and to Exclude Plaintiffs' Experts ("Defendants' *Daubert* Mot.," ECF No.
121) and Plaintiffs' Motion to Exclude Opinions and Testimony of Defendants' Proposed
Experts Dr. Hambric and Mr. Britven ("Plaintiffs' *Daubert* Mot.," ECF No. 124).  The
Court held a hearing on June 29, 2021.  (*See* ECF No. 161.)  Having carefully considered

the Parties' arguments, the evidence, and the law, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment, **DENIES WITHOUT PREJUDICE** Defendants' *Daubert* Motion, and **DENIES WITHOUT PREJUDICE** Plaintiffs' *Daubert* Motion, as follows.

### BACKGROUND[1]

Plaintiffs (also referred to as "ESI") are a leading innovator in Virtual Prototyping software and services. (*See* FAC, ECF No. 55 at 6.) Virtual Prototyping is a method in the process of product development to validate a design before committing to make a physical prototype. (*See id*.) In the case of vibro-acoustics analysis, this is done by creating computer generative geometrical shapes, building the shapes into a computer model, and analyzing the computer model to predict the vibration and the noise that would be observed if an actual test were to be performed. (*See id*.)

ESI developed and exclusively owns the VA One Vibro-Acoustic Simulation Software ("VA One"). (*See id*. at 10.) VA One allows users to diagnose potential noise and vibration problems in the design stage of a product. (*See id*.) This kind of simulation software is used in the auto, marine, aerospace and defense industries. (*See id*.) VA One consists of many sub-programs. (*See id*.) ESI also developed and exclusively owns the RAYON Boundary Element Method ("BEM") Solver file and model format, a component of VA One, which is used to describe the acoustic wave propagation in bounded and unbounded acoustic spaces. (*See id*.) The BEM Solver file and model format is used to communicate with other sub-programs of VA One. (*See id*. at 11.) The BEM Solver is the only solver that can be used with the VA One, unless another party misappropriates the underlying file and model format that comprises the BEM Solver. (*See id*.) ESI's internal documentation of the file and model format is a 24-page long French document, a trade secret, which is in a unique and custom format that would not be replicable by anyone

---

[1] This case was transferred after the Parties submitted their briefing for the Motion for Summary Judgment, and therefore, the Parties did not submit a statement of undisputed material facts pursuant to Civil Standing Order Section III.B.6.

without knowledge of the original software coding.  (*See id*. at 12.)  ESI has spent millions of dollars and decades to perfect its BEM Solver.  (*See id*.)

## I.   BREACH OF CONTRACT AND MISAPPROPRIATION OF TRADE SECRETS

Each individual Defendant worked for ESI with VA One, RAYONE BEM Solver, or both.  (*See* Opp'n to MSJ at 1.)  Mr. Terrence Connelly worked as a VA One Support Engineer, interfacing with customers and providing technical support on a daily basis; he also worked with ESI's BEM Solver, teaching customers to build models.  (*See id.* at 2.) Mr. Vincent Cotoni was ESI's lead acoustic scientist and helped customers with technical issues pertaining to the BEM Solver.  (*See id.*)  ESI used Mr. Cotoni's research to make ESI's VA One talk to the BEM Solver.  (*See id.*)  Each of the individual Defendants signed an employment agreement with ESI.  (*See* FAC at 6.)  In their respective employment agreements, each Defendant acknowledged that he/she would be informed of or have access to confidential information of ESI's, including "trade secrets," and that his/her relationship with ESI was "one of confidence with respect to the trade secret [which] . . . is . . . the exclusive property of [ESI]."  (*See id.* at 7; ECF Nos. 73-1;73-2; 73-3; and 73-4.)

Eventually, all four individual Defendants left ESI and began operating Wave Six, LLC ("Wave Six"), a direct competitor to ESI, and began working on a BEM Solver to replace ESI's.  (*See id.* at 9.)  Defendants misappropriated ESI's BEM Solver by using ESI's 24-page file and model format, a trade secret document, to parse a specific VA One output file (.ray file) and make it compatible with Defendants' "Wave6BEM Solver." (*See id.* at 15.)  Wave6BEM Solver could interact with ESI's VA One, which consequentially replaced ESI's BEM Solver.  (*See id*.)  Plaintiffs allege that Defendants were only able to create this BEM Solver by having direct knowledge of the meaning of ESI's file and model format.  (*See id*. at 15.)  Defendants challenge that allegation, asserting that Dr. Merz created the Wave6BEM Solver by reverse engineering certain model .ray files (input and output files of VA One), which were created and provided by ESI's customers, including

Lockheed Martin.  (*See* MSJ at 4.)   Ultimately, Wave Six, LLC merged into Dassault Systemes Simulia Corp. ("Dassault").  (*See* FAC at 9.)

## II.   COPYRIGHT INFRINGEMENT

In addition to products and services, ESI also provides training materials for engineering products and methods.  (*See id*. at 20.)  On or around October 16, 2005, ESI created training material titled Advanced Statistical Energy Analysis ("SEA Course"), which was given as a short course at an Acoustical Society America ("ASA") meeting in 2005 and later presented numerous times by ESI Personnel.  (*See id*.)  ESI owns registered copyrights for the SEA Course, which were issued on September 15, 2017 under Copyright Registration No. TX 8-403-795, and supplemented on November 6, 2017 by Copyright Registration No. TX 8-436-076.  (*See id*.)   Additionally, on or around June 2, 2006, ESI created a training source called VA One Training – Hybrid FE-SEA Methods ("VA One Training"), which ESI personnel used many times as a training source.  (*See id*.)  ESI owns a registered copyright for the  VA One Training under Registration No. TX 8-404-259, which was issued on September 15, 2017.  (*See id*.)

On or about July 6, 2017, ESI learned that Wave Six had contributed to a published reference textbook titled, "Engineering Vibroacoustic Analysis, Methods and Applications," edited by Stephen A. Hambric, Shung H. Sung, and Donald J. Nefske and published by John Wiley & Sons, Ltd. in 2016 as ISBN 978-1-119-95344-9. (*See id*. at 21.) Defendants Wave Six, Philip Shorter, and Vincent Cotoni were identified as contributors and authors of two chapters in that publication: Chapter 11, titled "Statistical Energy Analysis" and Chapter 12, titled "Hybrid FE-SEA."  (*See id*.)  Defendants copied and pasted much of ESI's work in these chapters.  (*See id*. at 22.)  These chapters have the same figures, in the same order, as the figures in the ESI materials.  (*See id*.)  While Defendant Mr. Shorter was employed at ESI, he created the Advanced Statistical Energy Analysis (SEA) Course and the VA One Training – Hybrid FE-SEA Methods.  (*See id*. at 21.) Shortly before Mr. Shorter's resignation from ESI, he was observed copying a nearly three-foot-high stack of documents including materials proprietary to ESI.  (*See id*. at 21–22.)

On November 10, 2017, Plaintiffs filed a Verified Complaint against Defendants, alleging causes of actions for misappropriation, breach of confidentiality agreement, preliminary injunctive and permanent injunctive relief, copyright infringement, and civil conspiracy.  (*See* ECF No. 1.)  Defendants filed a Motion to Dismiss, or in the alternative, Motion for a More Definite Statement, which was denied on September 25, 2018, by Judge Anthony J. Battaglia.  (*See* ECF No. 31.)  On May 31, 2019, Plaintiffs filed a First Amended Verified Complaint, adding Dassault as a Defendant.  (*See* ECF No. 55.) Subsequently, on September 1, 2020, Defendants filed the instant Motion for Summary Judgment (ECF No. 119, "MSJ") and *Daubert* Motion (ECF No. 121, "Defendants' *Daubert* Mot.") to exclude testimony of Plaintiffs' Experts, Mr. J. Stott Matthews, Mr. Robert J. Winiarski, and Dr. Kenneth Cunefare.  Plaintiffs then filed a *Daubert* Motion (ECF No. 124, "Plaintiffs' *Daubert* Mot.") to exclude testimony of Defendants' experts, Dr. Stephen Hambric and Mr. Thomas Britven.  On October 6, 2020, the case was transferred to the undersigned.  (*See* ECF No. 152.)

## MOTION FOR SUMMARY JUDGMENT

### I.   Legal Standard

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense.  Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  Material facts are those that may affect the outcome of the case.  *Anderson*, 477 U.S. at 248.  A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*  When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party.  *Celotex*, 477 U.S. at 323.  The moving party may meet this burden

by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

## II.   Analysis

Plaintiffs allege claims for misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA") of 2016 (Count I) and in violation of California Uniform Trade Secrets Act ("CUTSA") (Count II), (collectively, "trade secrets misappropriation claims"), Preliminary Injunctive and Permanent Injunctive Relief (Count IV), Civil Conspiracy (Count VI) against all Defendants, Breach of Confidentiality Agreement (Count III) against the individual Defendants, and Copyright Infringement (Count V) against Wave Six, Dassault, Mr. Shorter, and Mr. Cotoni. (*See generally* FAC.) Defendants seek summary judgment in their favor as to Breach of Confidentiality Agreement (Count III), Copyright Infringement (Count V), and the trade secrets misappropriation claims (Counts I and II). (*See generally* MSJ.)

*A.      Trade Secret Misappropriation*

Defendants argue the trade secrets misappropriation claims fail as a matter of law because: (1) they are time-barred; and (2) because Plaintiffs fail to meet their burden of proving misappropriation by a preponderance of evidence.  (*See* MSJ at 13–25.)   The elements of trade secret misappropriation under DTSA and CUTSA are essentially the same.  *Becton, Dickinson & Co. v. Cytek Biosciences Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500, at *2 (N.D. Cal. May 21, 2018).   A plaintiff must allege: "(1) that it is the owner of a trade secret, (2) that the defendant misappropriated the trade secret, and (3) that it was damaged by the defendant's actions."  *Way.com, Inc. v. Singh*, No. 3:18-CV-04819-WHO, 2018 WL 6704464, at *4 (N.D. Cal. Dec. 20, 2018) (quotations and citation omitted); *see CytoDyn of New Mexico, Inc. v. Amerimmune Pharm., Inc.*, 160 Cal. App. 4th 288, 297 (2008).   The DTSA and CUTSA define a trade secret as information that: (1) derives its economic value from not being generally known; and (2) is subject to reasonable measures of secrecy by its owner.  *See* 18 U.S.C. § 1839(3); Cal. Civ. Code § 3426.1(d). "A plaintiff seeking relief for misappropriation of trade secrets must identify the trade secrets and carry the burden of showing that they exist," and "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1164–65 (9th Cir. 1998) (quotations and citations omitted).

*1.      Time-Barred*

The Parties dispute when the statute of limitations began to run under CUTSA and DTSA.   The statute of limitations provision in the CUTSA states: "[a]n action for misappropriation must be brought within three years after the misappropriation is discovered [("actual notice")] or by the exercise of reasonable diligence should have been discovered [("inquiry notice")].  Cal. Civ. Code § 3426.6.  For the purposes of this section, a continuing misappropriation constitutes a single claim." *Id.*  The statute of limitations for the DTSA mirrors that of the CUTSA and provides that an action for misappropriation

"may not be commenced later than 3 years after the date on which the misappropriation with respect to which the action would relate is discovered or by the exercise of reasonable diligence should have been discovered. 18 U.S.C. § 1836(d). For purposes of this section, a continuing misappropriation constitutes a single claim of misappropriation." *Id.*

First, Defendants argue that Plaintiffs had actual notice of the alleged trade secret misappropriation as of February 2013, when ESI sent letters to Defendants Shorter, Cotoni, and Merz, threatening legal action for "alleged solicitation and disclosure of confidential ESI information." (*See* MSJ at 23 (citing ECF Nos. 24-7; 24-8; 24-9).) Plaintiffs respond that the Defendants cannot credibly argue that the February 2013 letter gave actual notice of misappropriation while simultaneously claiming that infringement did not begin until November 2013. (*See* Opp'n to MSJ at 22–24.)

Second, Defendants claim that Plaintiffs had constructive notice of the alleged trade secret misappropriation as early as September 11, 2014, when NASA issued a pre-solicitation publication stating that NASA would be purchasing the Wave6 BEM License from Wave Six, LLC and that it was seeking a BEM Solver "compatible with VA One Pre and Post Processor." (*See* MSJ at 23 (citing FAC at ¶¶ 80–81).) Plaintiffs respond they did not know any product existed that was "compatible" with VA One or, if such a product existed, how it was created or how it worked. (*See* Opp'n to MSJ at 23.)

Third, Defendants argue that ESI's employees were on notice that Defendants were creating a BEM Solver intended to be interoperable with VA One months before the "bar date." (*See* MSJ at 23–24.) Defendants point to an e-mail from November 4, 2014, in which Mr. Sebastien Chaigne, ESI's VA One Product Manager in 2014, says that he "knew [Lockheed Martin] was using [Defendants'] stuff (knew that from last Feb)," and that he "asked [Dr. Bryce Gardner from ESI] for 6 months to get in touch with them and ask what's up." (*See id.* (citing Ex. 22 at ECF No. 122-23).) Defendants also point to an April 3, 2014 business record from Wave Six, which details a trip report in which Dr. Phil Shorter from CD-Adapco recounts a conversation with Dr. Indranil Dandaroy, a non-party witness employed by Lockheed Martin. (*See id.* (citing Ex. 21 at ECF No. 123-12).) Defendants

state that the report details that Dr. Gardner at ESI "called [Dr. Dandaroy] and asked if he was working with CD-Adapco on a BEM Solver," and that Dr. Dandaroy "told [Dr. Gardner] that he was and that ESI needed to be a lot more reactive if they wanted to keep [Lockheed Martin's] business." (*See id.*) Additionally, on November 6, 2014, Mr. Chaigne wrote "I have an array of legal ways ready to be rolled out as soon as we have insights on their technique." (*Id.*)

In response, Plaintiffs contend that while Dr. Dandaroy testified during his deposition that he spoke with Dr. Gardner in 2014 or 2015, he stated that he "did [not] discuss the details of what [Lockheed Martin] was doing with the Wave6BEM," did not tell Dr. Gardner that "Lockheed had sent .ray files to Wave Six," and did not tell Dr. Gardner that "Lockheed would create models in VA One, solve that with Wave Six's solver, then read them back into VA One." (*See* Opp'n at 24 (citing Dandaroy Deposition at 229).) Thus, Plaintiffs reason that no detail of any kind about what Wave Six or Lockheed Martin was working on was ever divulged. (*See id.*) Instead, Plaintiffs claim that it was not until April 2016, when NASA gave such details, that Plaintiffs had actual knowledge of the facts giving rise to their trade secret misappropriation claim. (*See id.*) Plaintiffs further emphasize that Defendants made sure to conceal what they were working on and that "nobody within ESI knew what [they are] working on." (*See id.* at 24 (citing Ex. 28 at ECF No. 151-29; Ex. 9 at ECF No. 151-10).)

Given the foregoing, the Court **CONCLUDES** that there is a genuine dispute as to whether Plaintiffs had either actual or inquiry notice of Defendants' alleged misappropriation involving ESI's BEM Solver three years prior to November 10, 2017, the date this case was filed.

### 2. Failure to Meet Evidentiary Burden

Defendants also claim that Plaintiffs have failed to meet their burden of establishing misappropriation by a preponderance of the evidence. (*See* MSJ at 13–29.) However, "misappropriation and misuse can rarely be proved by convincing direct evidence. In most cases plaintiffs must construct a web of perhaps ambiguous circumstantial evidence from

which the trier of fact may draw inferences . . . that it is more probable than not that what plaintiffs allege happened did in fact take place." *Hanger Prosthetics & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1136 (E.D. Cal. 2008) (internal citations omitted); *see also Computer Sciences Corp. v. Computer Associates, Int'l, Inc.*, Nos. CV 98-1374-WMB SHX, 1999 WL 675446, at *12 (C.D. Cal. Aug. 12, 1999) ("[D]irect evidence of trade secret misappropriation is often hard to come by, and . . . misappropriation may therefore be inferred from ambiguous circumstantial evidence . . .").

First, Defendants argue Plaintiffs fail to establish that the 24-page BEM Solver document is a trade secret because Dr. Cunefare failed to conduct a proper analysis as to the document's status as a trade secret, including the fact that he made no effort to ascertain whether Plaintiffs made reasonable efforts under the circumstances to maintain the secrecy of the document.  (*See* MSJ at 20.)  While Plaintiffs do allege the 24-page trade secret document is one component of the trade secret that was misappropriated, Plaintiffs more broadly allege that their BEM Solver is the product at issue and there are other documents related to the BEM Solver that Plaintiffs allege are trade secrets that were infringed, such as the VA One Theory Manual and VA One User's Guide.  (*See* Order Denying Defendants' Motion to Dismiss at 10, ECF No. 31; Opp'n to MSJ at 7 (citing Cunefare Report at ¶¶ 35; 41–51).)  Further, as Judge Battaglia found, Plaintiffs have properly alleged that Defendants misappropriated their BEM Solver.  (*See* ECF No. 31.)  Defendants have therefore failed to show the absence of disputed material fact as to their claim that Plaintiffs have fail to meet the first element of misappropriation—ownership of trade secrets.

Second, Defendants contend Plaintiffs failed to take reasonable steps to protect their trade secrets, because none of their experts identified that the 24-page trade secret document was confidential or a trade secret, none of their witnesses knew that the document was an alleged trade secret, and no evidence shows they took any efforts to maintain the secrecy of the document.  (*See* MSJ at 20.)  Plaintiffs claim they took reasonable steps to maintain the confidentiality of its trade secrets, including confidentiality agreements, and the use of EULAs.  (*See* Opp'n at 18 (citing *MAI Sys. Corp.*

*v. Peak Comp., Inc.,* 991 F.2d 511, 521 (9th Cir. 1993) (finding confidentiality agreement supported "reasonable efforts").)  Moreover, Plaintiffs state Defendants concede the 24-page document was confidential and cite to the testimony by Drs. Connelly, Cotoni, Shorter and the declaration of Mr. Nicolas Zerbib.[2]  Among these, Mr. Zerbib's declaration states that Dr. Shorter asked him if he had access to the source code for ESI's BEM Solver, the trade secret document, and Mr. Zerbib told him he was not able to do so even within ESI, because it was confidential and could only be shared with those who had access to it.  (*See* ECF No. 151-7.)  Hence, genuine issues of material fact exist as to the reasonableness of Plaintiffs' effort to maintain the secrecy of their trade secrets.

Third, Defendants reason that Dr. Cunefare, Plaintiffs' technical expert, does not opine on any trade secret that was misappropriated by Defendants.  Rather, Defendants claim that Dr. Cunefare provides three possible paths Defendants could have taken to create the Wave6BEM parser code and make it interoperable with VA One, but does not offer any affirmative opinion as to which path Defendants actually took.  (*See* MSJ at 13–15.) Plaintiffs, however, point to Dr. Cunefare's opinion that his analysis of the source code for the Wave Six proves Defendants must have used information from explicit ESI proprietary documentation.  (*See* Opp'n at 8 (citing Dr. Cunefare Deposition and Report).)[3]

Defendants further argue that there is no evidence supporting any of the postulated paths.  As to the first postulated path—that the individual Defendants could have used prior knowledge based on employment with ESI—Defendants argue that there is no evidence the individual Defendants had any knowledge of the input and output files or the internal working of ESI's BEM Solver while employed at ESI, and even if they did, use of prior generalized knowledge cannot sustain a misappropriation claim pursuant to Cal. Bus. & Prof. Code § 16600.  (*See* MSJ at 13–15.)  Plaintiffs reply that prior generalized knowledge

---

[2]    Plaintiffs further claim that even if the 24-page document did not say the word confidential, employees knew it was a confidential document.  (*See* Opp'n at 18 (citing *Mattel, Inc. v. MGA Ent., Inc*., 782 F. Supp. 2d 911, 959 (C.D. Cal. 2011) (An employee's failure to mark documents as confidential or trade secret does not preclude a finding of reasonable efforts.))

[3]    The fact that Dr. Cunefare does give an opinion as to which specific path Defendants took is beside the point.  Dr. Cunefare's three postulated paths are each evidence ESI presents to establish misappropriation.

of the industry is different from specific knowledge or memorization of trade secrets, that is, information "learned as an employee." (*See* Opp'n to MSJ at 22.)

The Court agrees with Plaintiffs. Prior knowledge from a previous employer is distinct from prior generalized industry knowledge and that misappropriation can be predicated on the use of prior knowledge of trade secrets from a previous employer. *WeRide Corp. v. Kun Huang*, 379 F. Supp. 3d 834, 847 (N.D. Cal. 2019), modified in part, No. 5:18-CV-07233-EJD, 2019 WL 5722620 (N.D. Cal. Nov. 5, 2019) (distinguishing trade secrets of source code from common knowledge in the industry or publicly available code); *Greenly v. Cooper*, 77 Cal. App. 3d 382, 392 (Ct. App. 1978) (stating to afford protection to the employer, the information need not be in writing but may be in the employee's memory (citing *George v. Burdusis* 21 Cal.2d 153 (1942)). Further, Plaintiffs, at the very least, point to evidence that Mr. Cotoni conceded that in working for Wave Six, he did use some of his experience. (*See* Opp'n to MSJ at 22 (citing Cotoni Deposition at 127:1–25).) Plaintiffs have put forth sufficient evidence to show that genuine issues of material fact exist as to whether Defendants used knowledge and information gained through their prior employment at ESI to develop the Wave6BEM.

As to the second postulated path—that the individual Defendants could have used reverse engineering based on the VA One .ray model files provided by ESI customers—Defendants argue that the model files were ESI customers' property and not subject to any requirement for confidentiality Defendants owed under the EULAs, which only prohibited ESI-supplied software. (*See* MSJ at 16–17.) Additionally, Defendants assert that their technical expert, Dr. Hambric, was able to reverse engineer the input and output file formats for Wave6BEM without ever consulting the 24-page trade secret document. Defendants contrast Dr. Hambric's analysis with that of Plaintiff expert Dr. Cunefare, who not only failed to try and reverse engineer the Wave6BEM input/output file formats, but who also failed to offer an opinion as to whether the Defendants could have conducted such reverse engineering. (*See id.*)

In response, Plaintiffs claim that Lockheed Martin signed EULAs with ESI.  (*See* Opp'n to MSJ at 19.)  Plaintiffs cite the EULA agreement signed by Lockheed Martin and ESI, (*see id.* (citing ECF Nos. 151-24, 151-25)), and the Proprietary Information Agreement signed by Lockheed Martin in which it states Lockheed Martin will not share ESI proprietary information outside of its organization.  (*See id.* (citing ECF No. 151-26).)  Plaintiffs explain that the EULAs state Lockheed Martin "may not reverse engineer, decompile, or dissemble any compute model" and "it was strictly forbidden from reproducing or communicating all or part of the Software Product . . . which included software code and any technical documentation or associated manuals enabling performance of the program and/or . . . the database delivered," to Lockheed Martin.  (*See id.* (citing ECF Nos. 151-24, 151-25).)  Plaintiffs also claim Defendants induced Lockheed Martin to send Wave Six the .ray model files, to reverse engineer and create interoperable software.  (*See* Opp'n at 20 (citing Dandaroy Deposition at 46:6–25 stating he did not know whether it was permitted under EULA to send the .ray files); Connelly Deposition at 93:8–94:25 stating it is his understanding Dr. Shorter asked Lockheed Martin to send him the .ray files).)  Indeed, as Plaintiffs note, CUTSA and DTSA recognize "indirect trade secret misappropriation," a claim for which a plaintiff needs to establish, *inter alia*, the defendant acquired the trade secret from someone other than the plaintiff.  *Navigation Holdings, LLC*, 445 F. Supp. 3d at 79.  Plaintiffs therefore raise issues of material fact that the .ray model files were ESI's property and subject to a requirement for confidentiality owed under the EULAs.[4]

Lastly, as to the third postulated path—that Defendants used the 24-page trade secret document—Defendants argue there is no evidence that any of the individual Defendants used or consulted the document to create the Wave6BEM parser code, and hence, Plaintiffs

---

[4]      Plaintiffs are correct that their expert did not need to disprove the possibility of reverse engineering.  Reverse engineering is a defense to a misappropriation of trade secrets claim.  *Bal Seal Eng'g, Inc. v. Nelson Prod., Inc.*, No. 813CV01880JLSKESX, 2018 WL 4697255, at *4 (C.D. Cal. Aug. 3, 2018).  The evidence before the Court sufficiently establishes the existence of disputed material facts regarding the issue of reverse engineering.  For example, Dr. Cunefare opined that Wave Six's source code contains evidence that the authors did not exclusively rely on the .ray model files and that the authors must have had access to ESI's proprietary information.  (*See generally* Cunefare Report.)

fail to show the 24-page trade secret document was misappropriated.  (*See* MSJ at 18.)  However, Plaintiffs present various opinions by Dr. Cunefare that Defendants must have used example ESI VA One input and output files before they received the .ray model files to create their Wave6BEM Solver.  (*See* Opp'n to MSJ at 8–9; Cunefare Report.)

For the reasons set forth above, the Court **DENIES** Defendants' Motion for Summary Judgment as to the trade secrets misappropriation claims (Counts I and II).

### B.    Breach of Contract

Defendants argue that the non-solicitation provisions of the individual Defendant's employment contracts with ESI are void under Cal. Bus. & Prof. Code § 16600.  Defendants also assert that Plaintiffs have failed to produce evidence supporting their claims for breach of the non-solicitation covenants as alleged in the First Amended Complaint.  (*See* MSJ at 11–13.)  Plaintiffs counter that they are only seeking to enforce the Defendants' confidentiality agreements and that Section 16600 does not preclude restrictions that protect an employer's trade secrets, proprietary information, and confidential information.  (*See* Opp'n to MSJ at 6–7.)

Although California courts have consistently "condemn[ed]" agreements that place restraints on the pursuit of a business or profession, *Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *18 (N.D. Cal. July 1, 2011) (citing *Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937946 (2008)), "[a]n equally lengthy line of cases has consistently held former employees may not misappropriate the former employer's trade secrets to unfairly compete with the former employer." *Id.* (citing *Retirement Group v. Galante*, 176 Cal.App.4th 1226, 1237 (Cal.Ct.App.2009)). "Accordingly, 'courts have repeatedly held a former employee may be barred from soliciting existing customers to redirect their business away from the former employer and to the employee's new business if the employee is utilizing trade secret information to solicit those customers.'" *Id.*  Further, "courts have applied this principle to create a 'trade secret exception' to Section 16600, pursuant to which a non-compete or non-solicitation clause may be valid under Section 16600 if it is necessary to protect a trade secret." *Id.*

(citing *Asset Marketing Systems, Inc. v. Gagnon*, 542 F.3d 748, 758 (9th Cir. 2008)) ("Under California law, non-competition agreements are unenforceable unless necessary to protect an employer's trade secret.")  Hence, while the non-solicitation provision in the EULAs may be unenforceable under California law, the provisions which protect ESI's trade secrets may be enforced.  As set forth above, Plaintiffs have alleged that the Defendants misused the 24-page document, the VA One Theory manual and VA One User's Guide (*See* Opp'n to MSJ at 7), all of which Plaintiffs claim are trade secrets.  There is a genuine dispute between the parties as to whether Defendants breached their respective confidentiality agreements with ESI by improperly utilizing those claimed trade secrets. As such, the Court **DENIES** Defendants' Motion for Summary Judgment as to the Breach of Confidentiality Agreement Claim (Count III).

### C.    Copyright Infringement

Defendants request summary judgment regarding Plaintiffs' request for statutory damages and attorney's fees for failure to timely register copyrights pursuant to 17 U.S.C. § 412 and a dismissal of ESI's copyright infringement allegations for failure to provide any evidence to support actual damages.  (*See* MSJ at 8–10.)  Those requests are addressed in turn.

#### 1.    Statutory Damages

Defendants claim statutory damages and attorney's fees are not available to Plaintiffs due to their delay in registering their copyrights, pursuant to 17 U.S.C. § 412.[5] Under 17 U.S.C. § 504(a) and (c), a copyright owner may elect to recover statutory damages instead of actual damages and any additional profits.  Under 17 U.S.C. § 412(2), to recover statutory damages or attorney's fees, the copyrighted work must have been registered prior to commencement of the infringement, unless the registration is made within three months after first publication of the work. *Frank Music Corp.*, 772 F.2d at

---

[5]    Plaintiffs do not respond to this argument in their Opposition.

520 (precluding an award of attorneys' fees as well); *3 Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 707 n. 5 (9th Cir. 2004).

At issue here are the SEA Course and the VA One Training, which Plaintiffs allege were infringed when a third-party published "Engineering Vibroacoustic Analysis, Methods and Applications" in 2016.   As the Certificates of Registration provided by Plaintiffs with their First Amended Complaint demonstrate, SEA Course was registered on September 15, 2017, and first published on March 4, 2004, (*see* ECF No. 73-6), and VA One Training was registered on September 15, 2017, and first published on June 2, 2006. (*See* ECF No. 73-7.)   Because the alleged infringement commenced in 2016, when the third-party book was published, the copyrighted work, SEA Course and VA One Training were not registered prior to the commencement of infringement.   Further, the registrations of the copyrighted work were not made within three months after the first publication of the work.   Accordingly, the Court **GRANTS** the Motion for Summary Judgment as to statutory damages and attorney's fees.[6]

### 2.   *Dismissal of Copyright Infringement*

Asserting that Plaintiffs have failed to put forth any evidence to support actual damages, Defendants urge dismissal of Plaintiffs' copyright infringement allegations (Count V). (*See* MSJ at 16.)   Defendants note that Plaintiff's own witness, Dr. Bryce Gardner, testified ESI has no knowledge of any lost profits as a result of the publication of the book, and that Defendants Drs. Cotoni and Shorter waived any royalties from the sale of the book.  (*See* MSJ at 16–17.)   Plaintiffs respond that they are entitled to recover "indirect profits" stemming from the loss goodwill, reputation, credibility, and more, and that the editor of the book is a witness who will testify at trial.  (*See* Opp'n to MSJ at 25.)

Under 17 U.S.C. § 504(b), "[e]xcept as otherwise provided by this title, an infringer of copyright is liable for either: (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or (2) statutory damages, as provided by subsection (c)." Sub-section (b) provides for additional "indirect" profits as follows:

---

[6]   Plaintiffs conceded during the oral argument that statutory damages and attorney's fees are unavailable.

1   The copyright owner is entitled to recover the actual damages suffered by him

2   or her as a result of the infringement, and any profits of the infringer that are

3   attributable to the infringement and are not taken into account in computing

4   the actual damages. In establishing the infringer's profits, the copyright owner

5   is required to present proof only of the infringer's gross revenue, and the

6   infringer is required to prove his or her deductible expenses and the elements

7   of profit attributable to factors other than the copyrighted work.

8   17 U.S.C. § 504(b).  In the Ninth Circuit, a copyright infringement plaintiff who seeks to

9   recover indirect profits under Section 504(b) "must proffer some evidence [at the summary

10   judgment stage] to create a triable issue regarding whether the infringement at least

11   partially caused the profits that the infringer generated as the result of the infringement."

12   *Mackie v. Rieser,* 296 F.3d 909, 911 (9th Cir. 2002).

13   In addition to the book editor's anticipated testimony and the expected cross-

14   examination of Drs. Cotoni and Shorter, Plaintiffs draw the Court's attention to the report

15   authored by Mr. Winiarski, which discusses "damages of lost profits, unjust enrichment,

16   attorney's fees, and treble damages." (*See* Opp'n at 10.)  Plaintiffs have therefore put forth

17   evidence to create a triable issue regarding infringement-related damages.   The

18   Defendants' request for dismissal of the copyright infringement cause of action (Count V)

19   is **DENIED**.

20   / / /

21   / / /

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

17-CV-2293 TWR (MSB)

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Summary Judgment (ECF No.119).   Specifically, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Count V to the extent Plaintiffs seek statutory damages and attorney's fees and **DENIES** Defendants' Motion for Summary Judgment as to Counts I, II, and III in their entirety and as to Count V to the extent Plaintiffs seek remedies other than statutory damages or attorney's fees.   Lastly, the Court **DENIES WITHOUT PREJUDICE** Defendants' *Daubert* Motion (ECF No. 121) and Plaintiffs' *Daubert* Motion (ECF No. 124).

**IT IS SO ORDERED.**

Dated:  November 9, 2021

Honorable Todd W. Robinson
United States District Judge

17-CV-2293 TWR (MSB)